**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Mustaf Sheikh,

Plaintiff,

v.

Independent School District 535,
a/k/a Rochester Public Schools,

Defendants.

Civil No. 00-1896 (DWF/SRN)

**MEMORANDUM**
**OPINION AND ORDER**

---

Michael Mobley, Esq., Mobley Law Office, 701 4th Avenue South, Suite 500, Minneapolis, Minnesota 55415, appeared on behalf of the Plaintiff.

Ansis V. Viksnins, Esq. and Jennifer L. Suich, Esq., Lindquist & Vennum, 4200 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on October 5, 2001, pursuant to Defendant Independent School District 535's Motion for Summary Judgment. By the current action, Plaintiff Mustaf Sheikh, a Somali Muslim, seeks redress for alleged discrimination by Defendant based on Mr. Sheikh's religion and national origin. In his Complaint, Plaintiff Sheikh alleges the following: (1) Count 1: Discrimination on the Basis of Religion, Violation of Title 42 U.S.C. § 2000e – Disparate Treatment; (2) Count 2: Discrimination on the Basis of National Origin, Violation of Title 42 U.S.C. § 2000e – Disparate Treatment; (3) Count 3: Violation of Title 42 U.S.C. § 1981; (4) Count 4: Retaliation, Violation of § 704 of the Civil Rights Act of 1964; (5) Count 5: Title 42 U.S.C. § 1988, Attorney Fees; (6) Count 6: Discrimination on the Basis of Religion, Violation of Minn. Stat. § 363.03, subd. 6 – Disparate Treatment; (7) Count 7: Discrimination

FILED OCT 18 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD OCT 18 2001
DEPUTY CLERK

on the Basis of National Origin, Violation of Minn. Stat. § 363.03, subd. 6 – Disparate Treatment; and (8) Count 8: Reprisal, Violation of Minn. Stat. § 363.03, subd. 7. For the reasons set forth below, the Court grants Defendant's motion and dismisses Plaintiff's complaint with prejudice.

**Background**

During the late 1990s, there was a significant increase in the Somali student population in Rochester, Minnesota. Based on that trend, in fall 1998, Dr. John Frederickson, principal of the Mayo High School in Rochester, contacted a local Somali leader in search of a qualified Somali applicant to fill an available hall monitor position. Plaintiff Mustaf Sheikh, a native of Somalia and a practicing Muslim, was hired for the hall monitor position and began work at Mayo High School on November 23, 1998.

As a hall monitor, Mr. Sheikh was responsible for monitoring activity in the school corridors, escorting students to and from the main office in the event of disciplinary or other exceptional situations, covering study halls and other classes when no substitute teacher was otherwise available, and responding to radio calls from other hall monitors requesting assistance. The hall monitor position is considered as a paraprofessional position and is subject to the terms and conditions of the District's labor agreement with the Minnesota School Employees Association.

While employed at Mayo High School, Mr. Sheikh was also working a full-time job at IBM. In order to accommodate his commitment to IBM, the District allowed Mr. Sheikh to adjust his schedule such that he would begin his day at Mayo High School earlier than usual and thus leave earlier in the afternoon. In addition, the District allowed Mr. Sheikh to take an extended mid-day break on Fridays so that he could attend religious services at a local mosque.

On Mr. Sheikh's first days of work at Mayo High School, Mr. Sheikh was escorted around the building by a fellow hall monitor in order to meet other staff members. When he encountered female staff members, Mr. Sheikh declined to shake hands based on his adherence to a Muslim religious teaching that men should avoid physical contact with women who are not members of their immediate family. Mr. Sheikh describes this teaching as one intended to promote personal modesty. As an alternative to shaking hands, Mr. Sheikh clasped his hands together and bowed forward in greeting to the female staff members. It is undisputed that several of the female staff members took offense that Mr. Sheikh would not shake hands with them.

Mr. Sheikh contends that, following his introductions to the female staff members, he experienced discrimination by his co-workers in the forms of ostracism and fabricated complaints about his job performance. In addition, one of the female staff members drafted a letter, addressed to the Muslim leaders of Rochester, explaining the historical and cultural significance of the handshake and her explanation of how an "American" might react if their offer of a handshake were rejected. While Defendant maintains that the author did not send the letter herself, it appears that a copy of the letter may have been received by the Council on American-Islamic Relations ("CAIR"). CAIR sent a letter to Dr. Frederickson informing him of the organization's concern over Mr. Sheikh's experience and another incident where the author of the aforementioned letter was alleged to have told two Somali students in religious dress that they "looked like terrorists."

In response to these incidents and upon Mr. Sheikh's reports to administration, Dr. Frederickson met with Mr. Sheikh on numerous occasions and held several meetings with female staff to discuss the issues leading to the unrest. At these meetings, Dr. Frederickson communicated the school's position that Mr. Sheikh's refusal to shake hands with female staff

did not constitute sex discrimination. Moreover, on one occasion, Dr. Frederickson and Mr. Sheikh met with the superintendent of schools to discuss Mr. Sheikh's concerns. In addition, Mr. Sheikh met with Sandra Means, the Human Rights Coordinator for the District, who then contacted Dr. Frederickson to facilitate the district's response to Mr. Sheikh's concerns. At the district's invitation, Zafar Sidiqqi, the Director of Community and Media Relations at the Islamic Center of Rochester, spoke to the staff of Mayo High School regarding Somali culture and Muslim religious practices. The District also hired Pro Group, a human resources consulting firm, to conduct an investigation into the atmosphere at Mayo High School and to recommend additional ways in which the school could encourage and ensure a "harmonious working relationship."[1]

Also, after Mr. Sheikh began work at Mayo High School, Dr. Frederickson received reports from other staff members that Mr. Sheikh was not fulfilling his responsibilities as a hall monitor, individually and as a member of the team of hall monitors. On March 30, 1999, Dr. Frederickson completed Mr. Sheikh's 90-day probationary evaluation. While Dr. Frederickson found Mr. Sheikh to be "effectively performing in the position" in the majority of categories, he did find that Mr. Sheikh needed to improve in the areas of time monitoring, interpersonal skills with staff, interaction with and role-modeling for non-Somali students, and responsiveness to radio calls. After the probationary evaluation, there is evidence that Mr.

---

[1] Plaintiff indicated to the Court at hearing that the consulting firm was hired in response not to Mr. Sheikh's situation, but to other disruptive events at the school, namely the incident where students were told they looked like terrorists. The Court has been presented with no evidence to confirm such an interpretation, and the Court is not persuaded that the evaluation should not be considered as part of the District's response to improving the atmosphere of the school community for Mr. Sheikh, the students, and all of its members.

Sheikh began to develop attendance problems, and Dr. Frederickson continued to receive complaints from fellow staff about Mr. Sheikh's job performance.

On May 6, 1999, the District granted Mr. Sheikh's request for a leave of absence to visit his ailing mother in Africa. On August 30, 1999, Mr. Sheikh sent an e-mail to Dr. Frederickson, asking to continue his leave of absence through September 29, 1999. In a letter dated August 9, 1999, the District informed Mr. Sheikh that he had been placed on lay-off status, along with 12 other para-professionals, all of whom were non-Muslim and most of whom were white. The layoffs were instituted because of a reduction in workforce, and Mr. Sheikh was affected due to his lack of seniority. When several of the laid off employees were recalled at the beginning of the 1999-2000 school year, Mr. Sheikh was not among them because he had yet to return from Africa.

During the fall of 1999, Mr. Sheikh met with Jerry Williams, the Director of Human Resources for the District, in order to locate an appropriate job opening. In November 1999, Mr. Sheikh unsuccessfully applied for a position as a bilingual specialist/interpreter. While Mr. Sheikh was granted an interview, the position was offered to another candidate who was also Somali and who had a bachelor's degree.[2] Later that same month, Mr. Sheikh was offered a position as a hall monitor at a local middle school. He declined the position because it was for fewer hours than his previous position at Mayo High School. In January 2000, Mr. Sheikh unsuccessfully applied for a position as a minority parent and student liaison. The position was offered to a candidate who is Eritrean and possesses an associate's degree.

---

2 Mr. Sheikh's most advanced educational degree is a GED.

On March 21, 2000, Mr. Sheikh was recalled to a position as a hall monitor at Century High School ("Century"). Shortly after Mr. Sheikh began working at Century, he, on one occasion, was asked to remove his religious head wear pursuant to a school policy prohibiting the wearing of any type of head wear in the school building. In addition, the principal informed Mr. Sheikh that he would not be able to leave work to attend religious services at the local mosque on Fridays because of significant staffing needs at that time of day. Mr. Sheikh requested that he be able: (1) to use break times to pray independently and with students; (2) to wear religious head wear on Fridays and religious holidays; and (3) to combine his breaks on Fridays in order to attend mid-day services at the local mosque. Shortly thereafter, during Spring Break, the District reconsidered its earlier positions and granted Mr. Sheikh's requests with the only provisos that prayer during the school day was not to exceed more than seven to ten minutes in order to minimize interference with the academic schedule and that any time in excess of the one-hour combined break on Friday would result in a loss of pay.

Akin to the happenings at Mayo High School, the principal at Century received complaints from the other hall monitors regarding Mr. Sheikh's performance. On one occasion, Mr. Sheikh was using a telephone in the administrative offices of Century to contact his union representative in order to report his concerns regarding what he considered to be unfounded criticism by his co-workers. Upon exiting the room he had been using, Mr. Sheikh encountered a secretary who asserts she was passing by in order to retrieve some office supplies. Mr. Sheikh, however, perceived that she had been eavesdropping on his telephone call and became quite upset. Upon their exchange of words, an assistant principal intervened. There is some dispute as to who said what during the altercation. However, as a result, Mr. Sheikh was placed on

suspension with pay on May 15, 2000, pending further review of the incident, his job performance, and his "creating a negative work climate at Century High School."

On July 19, 2000, Mr. Sheikh was again notified that he had once again been laid off due to a reduction in force. Due to the District's substantial budgetary problems, Mr. Sheikh has not been recalled and remains on layoff status.

In his Complaint, Mr. Sheikh alleges that he suffered discrimination, based on his religion and his national origin, by the following actions: (1) ostracism by his co-workers; (2) ridicule in front of other co-workers and students, primarily for speaking in his native language with a Somali student; (3) refusal of his request to visit a local mosque during lunch breaks; (4) an order to remove his Muslim headdress; (5) failure to recall him to employment at the beginning of the 1999-2000 school year; and (6) denial of his application for the positions of Minority Student/Parent Liaison and Bilingual Specialist. These same allegations are restated in the Complaint to form the basis of Mr. Sheikh's claim of retaliation.

By its current motion, Defendant seeks summary judgment on all of Plaintiff's claims.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and

inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Issues**

**a. In General**

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the U.S. Supreme Court set forth a three-stage burden-shifting test that has been consistently applied in discrimination cases. *See Ryther v. KARE 11*, 108 F.3d 832, 836 (8th Cir. 1997) (adopting *McDonnell Douglas* test as applied in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 520 (1993).). The first stage requires that the plaintiff establish a *prima facie* case of discrimination. *Ryther*, 108 F.3d at 836. If the plaintiff is successful, then the burden shifts to the defendant who is required to provide evidence of a valid, non-discriminatory reason for the alleged discriminatory conduct. *Id.* Should the defendant produce such evidence, then the burden shifts back to the plaintiff requiring him/her to prove intentional discrimination. *Id.* The plaintiff is not required to present new evidence at this stage. Instead, it is sufficient for the plaintiff to rely on the evidence presented to establish the *prima facie* case coupled with the claim that the defendant's reason is mere pretext. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S. Ct. 2097, 2108-09 (2000).

**b. Discrimination**

The *McDonnell Douglas* burden-shifting scheme is appropriately applied to Plaintiff's claims of discrimination.[3] Plaintiff's claims have been characterized and addressed by the parties as follows: (1) the District's alleged failure to prevent a hostile working environment; (2) the District's alleged discriminatory layoff and recall practice; (3) the District's alleged discriminatory failure to rehire Mr. Sheikh; (4) the District's alleged failure to accommodate Mr. Sheikh's religious practices; and (5) the District's alleged discriminatory suspension of Mr. Sheikh. The Court will address each in turn.

**i. Hostile Work Environment**

In order to establish a *prima facie* case of hostile work environment harassment, Mr. Sheikh must show that: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) there is a causal nexus between the two; (4) the harassment affected a term, condition, or privilege of his employment; and (5) the District knew or should have known of the harassment and failed to take prompt remedial action. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Scusa v. Nestle U.S.A. Co., Inc.*, 181 F.3d 958, 967 (8th Cir. 1999).

The parties do not dispute that Mr. Sheikh is a member of a protected class. The parties do dispute, however, whether the conduct of which Mr. Sheikh complains constitutes harassment and whether the District knew of the harassment and failed to take prompt remedial action. To form the basis of this claim, Mr. Sheikh refers to the actions of his co-workers at the Mayo High

---

[3] Plaintiff has raised claims of discrimination and retaliation under both Title VII and the Minnesota Human Rights Act ("the MHRA"). The Eighth Circuit and Minnesota courts have consistently held that such claims are analogous and are properly analyzed the same under the *McDonnell Douglas* framework. *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96 (Minn. 1999) (disparate treatment); *Stuart v. General Motors Corp.*, 217 F.3d 621 (8th Cir. 2000) (retaliation); *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428 (Minn. 1983) (reprisal).

School. While the evidence serves to show that there was tension between Mr. Sheikh and his co-workers, there is insufficient evidence in the record to establish that the co-workers' actions constituted more than their displeasure with Mr. Sheikh's job performance and mere ostracism. The Court recognizes that even ostracism and unrest with one's colleagues can create an unpleasant working environment; however, such circumstances do not necessarily rise to the level of actionable hostile work environment harassment. *Scusa*, 181 F.3d at 969. In *Scusa*, the Eighth Circuit held that "without evidence of some more tangible change in duties or working conditions that constitute a material employment disadvantage, general allegations of co-worker ostracism are not sufficient to rise to the level of an adverse employment action for purposes of Title VII." *Id.* Evidence of that "more tangible change" has not been presented here and thus the Court cannot find that Plaintiff has met his burden of establishing a *prima facie* case of hostile work environment harassment.

Moreover, the evidence before the Court serves to show that when the District became aware of unrest in the working environment at Mayo High School, it responded promptly with such actions as meeting with staff, inviting a cultural and religious leader to speak to the staff, and hiring a consulting team to advise of ways in which to further improve the working environment. The District's actions were primarily in response to the earlier interactions between Mr. Sheikh and the female staff, upon their introduction. There is no evidence that, subsequent to the District's various responses, the environment worsened in any way. At most, the ostracism and displeasure of Mr. Sheikh's co-workers continued, but as the Court has stated, such behavior, without more, is not actionable.

Accordingly, the Court finds summary judgment to be appropriate with respect to Plaintiff's claim of discrimination based on hostile work environment harassment.

**ii. Layoff/Recall Practice**

With respect to the District's layoff and recall practice, the parties do not dispute the circumstances of Mr. Sheikh's layoff, nor his failure to be recalled. Plaintiff seems to be arguing, however, that the District's claim that its decisions were based on Mr. Sheikh's lack of seniority and his absence from the country at the beginning of the school year was pretextual. Plaintiff has not alleged sufficient evidence to support such a claim, and merely stating as such is insufficient in this case. Both Title VII and the MHRA provide for seniority as a basis upon which an employer may legitimately base its decisions with respect to terms, conditions, privileges, layoffs, and job assignments. 42 U.S.C. § 2000e-2(h); Minn. Stat. § 363.02, subd. 1(4). Plaintiff has pointed to nothing within the record that would support a determination that the District did otherwise, and thus, the Court finds summary judgment to be appropriate with respect to Plaintiff's claim of discrimination based on the District's layoff and recall decisions.

**iii. Rehiring Practice**

To the extent that Mr. Sheikh also alleges that the District's failure to hire him for the bilingual and minority liaison positions also forms the basis for his discrimination claim, the Court also finds this claim appropriate for summary judgment. In order to establish a *prima facie* case on this theory, Mr. Sheikh must show that: (1) he is a member of a protected group; (2) he sought and qualified for opportunities that the employer was making available to others; (3) he, despite his qualifications, was denied the opportunities; and (4) after he was denied, the opportunities remained available or were given to other persons with plaintiff's qualifications. *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986).

Both of the positions for which Mr. Sheikh applied were filled by applicants who were also members of a protected class by their race and ethnicity. *Walker v. St. Anthony's Med. Ctr.*, 881 F.2d 554, 558 (8th Cir. 1989) (finding status of replacement or hired applicant as member of protected class to be relevant but not determinative in evaluation of alleged discriminatory intent of employer). In addition, both candidates, by their level of education, could objectively be determined to be more qualified for the positions than Mr. Sheikh. Accordingly, the Court finds that Plaintiff has not established that he was of equal qualifications to the applicants who were ultimately hired nor that there is a clear inference of discrimination on the part of the District. On this theory as well, the Court finds summary judgment to be appropriate.

**iv. Religious Accommodation**

In order to establish a *prima facie* case of religious discrimination by a failure to accommodate, a plaintiff must show that: (1) he has a *bona fide* belief that compliance with an employment requirement is contrary to his religious faith; (2) he informed his employer about the conflict; and (3) he was discharged or disciplined because of his refusal to comply with the employment requirement. *Brown v. General Motors Corp.*, 601 F.2d 956, 959 (8th Cir. 1979). An employer has no duty to accommodate an employee's religious observances if such accommodation would cause undue hardship. *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977).

The basis of Mr. Sheikh's claim for failure to accommodate arises from his time at Century High School.[4] While Mr. Sheikh was told on one occasion to remove his religious head

---

[4] At hearing, Plaintiff characterized his failure to accommodate claim as being based in part on Dr. Frederickson's alleged requirement that Mr. Sheikh shake hands with Geri Brown in order to continue working at Mayo High School. Plaintiff did not characterize his (continued...)

wear in order to comply with a blanket school policy prohibiting all head wear, subsequent to that occasion, Mr. Sheikh was granted each of the religious accommodations he requested with minimal limitations in order to work within the school schedule. Mr. Sheikh was not disciplined nor was her terminated based on his request for accommodation nor his exercise of his beliefs once the accommodations were granted.

Accordingly, the Court finds summary judgment to be appropriate with respect to Mr. Sheikh's claim of religious discrimination based on an alleged failure to accommodate.

**v. Suspension**

To the extent that Plaintiff also alleges that his suspension with pay was also discriminatory, the Court finds that Plaintiff has failed to show that the disciplinary action was unjustified and that other employees similarly situated, but outside his protected class, were treated more favorably. *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 259-60 (8th Cir. 1996) (requiring disparate treatment to be established by proof that plaintiff treated less favorably than similarly situated employees outside protected class); *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d

---

[4](...continued)
claim as such within his Complaint, nor in his charges to the EEOC. A defendant must be able to rely on EEOC charges and a plaintiff's Complaint to provide notice of the claims against which it will have to defend. To allow a plaintiff to alter his theory midstream, especially when a new or altered claim is being based on facts which have been known and alleged since the beginning of a plaintiff's action, would serve to defeat the very purpose of notice. *See Wallin v. Minnesota Dept. of Corr.*, 153 F.3d 681, 688-89 (8th Cir. 1998), *cert. denied,* 526 U.S. 1004 (1999) (affirming dismissal of retaliation charge not previously alleged and which arose from the same set of circumstances as the other remaining claims); *Roark v. City of Hazen, Ark.*, 189 F.3d 758, 761 (8th Cir. 1999) (affirming dismissal of claims of retaliation and discrimination during the course of employment for lack of assertion in EEOC charge); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1183-84 (8th Cir. 1998) (affirming dismissal of claim of retaliation and discrimination based on theory different from that alleged in EEOC charge). Accordingly, the Court declines to allow Plaintiff to recharacterize his claim of accommodation to be based instead on the events that occurred at Mayo High School.

968, 972 (8th Cir. 1994) (requiring that must be similarly situated "in all relevant respects" such as being involved in or accused of the same offense and then disciplined in different ways). Plaintiff has not challenged the basis articulated by the District. Plaintiff has also not pointed to any other situations in which another employee has been disciplined let alone one who is "similarly situated in all relevant respects." Indeed, the only evidence relating to Century High School is used by the Plaintiff to form the basis of his accommodation claim. Accordingly, the Court finds summary judgment to be appropriate on this claim as well.

**c. Retaliation**

In order to establish a *prima facie* case of retaliation, Plaintiff must show that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001). Given the Court's analysis set forth above and Plaintiff's failure to articulate an independent basis for his retaliation claim, the Court finds that Plaintiff has not shown that he suffered an adverse employment action in response to his religious practices and requests for accommodation. Accordingly, the Court finds that Plaintiff has not met his burden to establish a *prima facie* case and thus the Court finds summary judgment to be appropriate.

**3. Conclusion**

The Court is deeply concerned by the allegations in this case and the undisputed facts that occurred at the beginning of Mr. Sheikh's relationship with the Mayo High School. While the Court finds summary judgment to be wholly appropriate in this case given the District's actions and the evidence presented, the hope of the Court is that the employees, students, and parents of the District's schools fully engage with the District to create a working and learning environment in which the diversity of cultural and religious practices may be both respected and celebrated by

all. That said, the Court finds that the requisite facts to establish claims of discrimination and retaliation have not been provided here, and accordingly, the Court finds summary judgment to be appropriate.

For the reasons stated, **IT IS HEREBY ORDERED** THAT**:**

1. Defendant's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**; and

2. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 18, 2001

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995